47 So.2d 257

**McLEAN et al. v. CHURCH OF GOD et al.**

**EXECUTIVE COUNCIL OF CHURCH OF GOD et al. v. MASON et al.**

**6 Div. 853, 867.**

Supreme Court of Alabama.

June 30, 1950.

Finis E. St. John, of Cullman, for appellant McLean.

W. Marvin Scott, of Cullman, for appellants Executive Council Church of God and others.

Kilpatrick & Entrekin and John H. Chapman, all of Cullman, for appellees.

LIVINGSTON, Justice.

The records before us present two appeals, consolidated by order of court, in cases designated as 6 Div. 853 and 6 Div. 867.

The appeal in case 6 Div. 853, is from a decree sustaining demurrer to the bill of complaint and dismissing the bill. The sole purpose of the bill is the construction of one feature of the will of T. P. Pierce, deceased, the complainants seeking a decree of invalidity, which would result in the vesting of title to a house and lot in the City of Cullman in the complainants.

The respondents, an unincorporated religious society and two individual members, filed a demurrer. In the court below the bill and the demurrer were treated as sufficient to present the meritorious question involved, and the trial court confined itself to that question: the effect of its decree being to sustain the controverted provision of the will. Both the appellant and the appellees by their briefs filed here limit their argument to the single question stated, and we will so confine our consideration.

The pertinent part of Pierce's will is as follows: "3rd. If there continues to be an established congregation at the Church of God, whose headquarters is at Anniston, Indiana, and whose church paper is the Gospel Trumpet. The said Congregation is now located at or next door south of where we are living. Then if this Congregation is still established at the death of my wife, then the home place being a lot 115 feet front by 200 back is to go to said Church absolutely."

It is not questioned that the devisee named is an unincorporated religious society.

■ It is well settled in this State, as well as in other jurisdictions, that an unincorporated religious society is without capacity to acquire or hold title to real property. Burke v. Roper, 79 Ala. 138; Stewart v. White, 128 Ala. 202, 30 So. 526, 55 L.R.A. 211; Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947, 139 Am.St.Rep. 41; Street v. Pitts, 238 Ala. 531, 192 So. 258; Darby v. Jones, 249 Ala. 104, 29 So.2d 879; 10 Am.Jur. 608; 14 Corpus Juris Secundum, Charities, § 34, page 468.

■ Appellees contend that gifts of this sort are within the class of gifts for charitable uses and fall within the exception to the foregoing general rule. It is pointed out that a gift to a church is a charitable one: that the very term "church" imports an organization for religious purposes, and property given to it *eo nomine* in the ab-

sence of all declarations of trust or use must, by necessary implication, be intended to be given to promote the purpose for which a church is instituted, the most prominent of which is the public worship of God. 10 Am.Jur. 626. It is therefore contended that the gift in this case is within the influence of the general rule that a bequest for a charitable use to an unincorporated society may be enforced, and that trusts, otherwise valid, when in aid of religious, charitable or educational enterprises, are not void because of lack of corporate capacity in the beneficiary. 10 Am. Jur. 609. That such, in effect, is the rule of our decisions clearly appears from the cases of Carter v. Balfour's Adm'r, 19 Ala. 814; Williams v. Pearson, 38 Ala. 299; Crim v. Williamson, 180 Ala. 179, 60 So. 293, and Tarver v. Weaver, 221 Ala. 663, 130 So. 209.

But we think it clearly apparent that the rule with respect to charitable gifts and uses can have no application to the devise involved in this case. Such rule has been applied in Alabama only to personal property, to the end that certain unincorporated or voluntary societies may take and hold gifts of money, or the income from property, as trustees for the purpose of administering a charitable trust, where it is bound to be so applied. Moseley v. Smiley, 171 Ala. 593, 55 So. 143.

We have no statute nor have we recognized charitable or religious societies as having a quasi corporate existence with power to hold land, as has been done in some jurisdictions. 10 Am.Jur. section 33, page 609. On the contrary, our cases have reiterated that such societies are incapable of acquiring and holding title to land. Authorities supra.

██ The devise in this case is of land itself, not its income or beneficial use: it is not to a trustee, but to the unincorporated society eo nomine. It is significant that the devise is made upon the condition that the church, or the congregation, be in existence at the death of testator's wife. This would manifest clearly a purpose to devote the property, not to a purpose, but to the society. Having in mind the possibility that the society might not be in existence at a particular time, the testator must also have been aware of a possibility that the society might not be in existence at some later time. Yet he made no provision for such a contingency. On the contrary, he provided that, the society being in existence on the death of his wife, the property should go to it absolutely. There is, therefore, an entire absence of indicia of an intention to create a trust. It would, in our opinion, do violence to the very terms of the will to construe it otherwise. An unincorporated society is without capacity to hold title to real property. It can no more hold as trustee than in absolute fee. Without some trust device, a grant or devise of such property to such an association is void. Darby v. Jones, supra; 10 Am.Jur. 608, 609.

It results that, in our opinion, the trial court erred in sustaining the demurrer to the bill.

Pending this proceeding certain parties filed a petition to intervene. They were W. P. Harding and others, as trustees of the Church of God, an unincorporated religious society located at Fourth and Cleveland Streets in Cullman, Alabama; the Church of God, an unincorporated religious society, and the executive council of the Church of God, a corporation. The petition to intervene was granted, and the interveners filed what is variously termed a cross bill of intervention, an original bill of intervention in the nature of a cross bill, or an original bill in the nature of a supplemental bill. In its final analysis, this pleading may be said to have had as its purpose an adjudication that, by reason of a split or schism in the local church, the faction coming in by intervention was the true church, and was the entity to which the testator Pierce undertook to devise the property in question. Other and incidental relief was sought by way of injunction to restrain the original respondents, who likewise denominated themselves the Church of God, from assuming control of the church property to the exclusion of the intervening faction.

The original respondents (which we may for convenience term the Griffin faction) filed a plea in abatement, asserting that the interveners (which may be termed the

Harding faction) and the attorney purporting to represent them were without authority to represent the Church of God, the local church or congregation, and sought to abate all papers, pleadings and matters of every kind filed in the cause by the attorney for the Harding faction. This plea in abatement was set down for hearing and was heard on oral testimony.

Thereafter the interveners filed application for a temporary injunction to restrain the pastor of the Griffin faction of the church from assuming possession and control of the property here involved. This application was denied. The cause came on for submission on the two phases (1) on demurrer to the original bill of complaint, and (2) on the plea in abatement. By its decree the trial court concluded that the provision of the will, hereinabove considered, was a valid bequest and, therefore, the original bill of complaint was subject to the respondents' demurrer. He concluded that the original bill could not be amended to meet the defect pointed out and dismissed the bill.

Insofar as this branch of the litigation is concerned, in view of the conclusion we have reached and stated hereinabove, the phases of the decree, or decrees, ruling upon the plea in abatement and demurrers to the bill of intervention or cross bill filed by the interveners, are immaterial. Since, as we have pointed out, the bequest was void as an attempt to grant real property to an unincorporated religious society, it matters not which of the rival factions might have a better claim.

But for the purposes of clarity we will here mention the remaining phases of the decrees. Proceeding to its conclusion on the plea in abatement, the decree points out that:

"The plea in abatement in this case in substance sets up that the respondents are the true Church of God, and that the attorney representing the intervener is without authority to represent the Church of God, because he receives his employment from the interveners, and it is prayed that all pleadings, and matters of every kind filed by the attorney for the interveners be abated. The court is of the opinion that the plea in abatement raises a false issue, to wit: which group is the real Church of God? The real question to be settled by this case is: To whom did the testator intend to leave the property in question? * * *

"At the time the plea was filed the intervener was already admitted to the suit by a previous order allowing the intervention; this gives it sufficient standing in the case to present such evidence as it desires on the question of intent of the testator to show its interest in the property devised if and when issue on this question is joined.

"The court is of the opinion, and it is so ordered that the only property subject of this suit is the property described in the bill of complaint, and all other property which has been brought into the litigation by the cross bill is improperly before the court in this suit."

The court thereupon overruled and denied the plea in abatement, but allowed respondents time to plead further to the cross bill. Thereafter respondents demurred to the cross bill, and the trial court rendered a decree sustaining said demurrer.

We repeat that on the appeal in this branch of the litigation, all those rulings with respect to the cross bill and the plea in abatement are immaterial, the conclusion of invalidity of the bequest rendering them moot. It is to be borne in mind that this branch of the litigation dealt alone with the property described in the will, which constituted the residence of the testator and his wife.

## Case No. 867.

While the proceeding in case No. 853 was pending the same parties who were interveners in that case filed an original bill against the same parties who were original respondents in case No. 853. This bill, like the cross bill, or bill of intervention in the other case, undertook to show that the complainants, rather than respondents, constituted or represented the true Church of God in the town of Cullman. It alleges the grant by deed of certain property in the town of Cullman by Pierce and his wife to the trustees of the said unincorporated Church of God in Cullman. This property

is known as the church property. Substantially the same questions are involved in this case, as disclosed by the original bill and the answer of the respondents, as was involved in case No. 853. That is to say, a controversy between rival factions of the Church of God at Cullman, with respect to the ownership and right of control and use of the church property, determinable by a solution of the question as to which of the factions was or represented the true church.

This cause was submitted upon the petition for temporary injunction as prayed for in the bill, the affidavits and exhibits attached thereto, the answer of respondents and affidavits and exhibits attached thereto, together with testimony offered by petitioners during the course of the hearing and argument of the solicitors for the parties. Upon a consideration of all of which, the chancellor denied the petition for a temporary injunction. It is from that order or decree that the appeal by complainants in this cause was taken.

By their briefs the parties go into the meritorious questions involved in a final determination of the cause, such as a proper construction of the deeds of conveyance by which the title to the church property is deraigned; the validity of the contradictory claims of the opposing factions as being the true church or the entity intended by the grantor as the recipient of his benevolence, as well as the factors entering into a determination of the identity of the grantee, whether by adherence to a particular faith or by recognition on the part of a putative superior ecclesiastical body. But these questions we are not at liberty to consider or decide. They were not the subject of the decree below, and what has not been decided we cannot review on appeal.

■ This review is thus limited to the propriety *vel non* in denying the temporary writ (an order within the comprehension of § 1057, Title 7, Code of 1940). We have held that the grant or refusal of a temporary injunction rests largely within the discretion of the court. State v. Mobile and Ohio Railroad Co., 228 Ala. 533, 154 So. 91; Berman v. Wreck-A-Pair Bldg. Co., 234 Ala. 293, 175 So. 269. It is also recognized that the relative convenience and inconvenience which may result to the parties by issuance or denial of the writ may be taken into consideration. Davis v. Sowell, 77 Ala. 262; Jones v. Jefferson County, 203 Ala. 137, 82 So. 167.

■ After a careful consideration of the record before us on this appeal, we find nothing which would seem to require issuance of the temporary writ in order to maintain the status quo. There is apparently no effort or purpose on the part of the respondents to dispose of the property. It seems rather that whatever inconvenience might result is equally balanced. The parties respondent appear to be the identical parties, or successors, who were in control of the church during the lifetime of the grantor; that they and their associates have long held and continue to hold worship services in the church property. It is not entirely clear (and this is not vital) whether the parties respondent have excluded the complainants, or whether it is the purpose of the complainants to exclude the respondents. But suffice it to say that we find no compelling reason for the issuance of an injunction pendente lite, and therefore approve the order of the trial court denying such writ.

It results that the decree in case No. 853, sustaining the demurrer to the bill of complaint is reversed and a decree here rendered overruling the demurrer. The decree or order denying a temporary injunction in case No. 867 is affirmed.

Reversed, rendered and remanded as to case No. 853.

Affirmed as to case No. 867.

FOSTER, SIMPSON and STAKELY, JJ., concur.